UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTIAN MULLER, | ) |
| Petitioner, | ) CIVIL ACTION |
| v. | ) NO. 18-40172-TSH |
| COLETTE GOGUEN, | ) |
| Respondent. | ) |

## ORDER AND MEMORANDUM ON PETITION FOR WRIT OF HABEAS CORPUS (Docket No. 1) & RESPONDENT'S MOTION TO DISMISS (Docket No. 12)

**June 25, 2019**

**HILLMAN, D.J.**

On March 14, 2011, a Worcester County jury found Christian Muller ("Petitioner") guilty of seven offenses: two counts of first-degree murder, one count of armed assault with intent to murder, three counts of armed home invasion, one count of unlawful possession of a firearm. (Docket No. 16, at 9).

On March 31, 2011, Petitioner filed a notice of appeal to the SJC. *Id.* at 10. Petitioner argued:

> (1) the jury instruction on criminal responsibility and voluntary intoxication was erroneous because it failed to comply with *Commonwealth v. Berry*, 457 Mass. 602, 931 N.E.2d 972 (2010), *S.C.*, 466 Mass. 763, 2 N.E.3d 177 (2014), and *Commonwealth v. DiPadova*, 460 Mass. 424, 951 N.E.2d 891 (2011); (2) certain of the jury instructions were fatally flawed; and (3) the prosecutor's closing argument was improper.

*Commonwealth v. Muller*, 477 Mass. 415, 416, 78 N.E.3d 51 (2017). Petitioner sought relief pursuant to Mass. Gen. Laws ch. 278, § 33E, which permits the SJC to "(a) order a new trial or (b) direct the entry of a verdict of a lesser degree of guilt, and remand the case to the superior court for the imposition of sentence." The SJC affirmed the convictions and declined to grant relief pursuant to Section 33E. *Id.*

On October 22, 2018, Petitioner filed his habeas petition in this Court. (Docket No. 1). Petitioner alleges the following grounds for relief:

> Ground One: the errors in the jury instructions noted by the SJC violated his right to Due Process by trivializing the burden of proof necessary for a conviction
>
> Ground Two: the criminal responsibility and voluntary intoxication instructions were erroneous and consequently violated his right to due process
>
> Ground Three: the prosecutor "improperly demeaned the defense of lack of criminal responsibility" which "affected the impartiality of the jury."
>
> Ground Four: the state's judicial system failed to fulfill its constitutional responsibilities in the adjudication of mentally disabled persons.

(Docket No. 1, at 6, 8, 9, 11). On February 1, 2019, Superintendent Collette Goguen ("Respondent") moved to dismiss the petition. (Docket No. 12). For the reasons stated below, the petition for writ of habeas corpus (Docket No. 1) is ***denied*** and Respondent's motion to dismiss (Docket No. 12) is ***granted***.

## **Background**

In federal habeas proceedings, "the state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary." *Ouber v. Guarino*, 293 F.3d 19, 27 (1st Cir. 2002). That presumption "remains true when those findings are made by a state appellate court as well as when they are made by a state

trial court." *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002) (citations omitted). In this case, the Massachusetts Supreme Judicial Court ("SJC") summarized the Commonwealth's case as follows:

> On the evening of July 8, 2007, Joanne Mercier was in her bedroom in the third-floor apartment that she shared with her brother, Aaron Bash, in Dudley. Bash was asleep in his bedroom and their friend, Denise Johnston, was sleeping on a sofa in the living room. Shortly after midnight on July 9, the defendant and Marc Letang kicked down the back door and entered the apartment with their guns drawn. The men walked through the kitchen and entered Mercier's bedroom, asking where Bash was. After Mercier told them that Bash was asleep in his bedroom, the men left Mercier's room and awoke Bash. As Mercier followed the men into Bash's bedroom, she heard the defendant asking Bash whether he was sleeping with the defendant's wife. Bash denied the accusation.
>
> Letang went into the living room and brought Johnston into Bash's bedroom at the defendant's request. The defendant was at the foot of the bed facing the victims, who were all sitting on the bed, while Letang stood in the corner of the room. The defendant continued to accuse Bash of sleeping with his wife and Bash repeatedly denied it, stating that he would not do that to his friend. Finally, the defendant told Bash that if he just admitted it and told the defendant what he wanted to hear, this would all be over. When Bash refused to admit to the defendant's accusations, the defendant said, "Fuck this," and shot Johnston in the head. As Bash asked the defendant, "What the eff are you doing?" the defendant shot Mercier in the head. When Mercier regained consciousness a few minutes later, she realized that the defendant and Letang were gone, and discovered that Johnston was still breathing despite the gunshot to her head.
>
> Mercier had not yet comprehended that she had been shot, but knew she needed to call an ambulance for Johnston. She retrieved her cellular telephone and then called to Bash. When Bash failed to answer her, she looked him and saw that he had been fatally shot in the head. Mercier was so distraught that she had to telephone 911 twice because, at first, she could not remember where she was.
>
> Shortly after midnight on July 9, 2007, a patron was leaving a nearby bar when he heard five to seven loud noises he assumed were fireworks. Approximately one minute later, he observed two men, whom he was able to describe, running around the corner; one of the men was carrying a firearm. The witness heard someone say, "Go. Let's go," as the men got into a vehicle and drove away.
>
> When officers entered the apartment, they observed Mercier conscious and bleeding from her head. She was in shock, crying and "yelling things," but was able to communicate that "Christian" shot her.
>
> Officers then discovered Bash and Johnston. Bash was found on the bed; he was dead from two gunshot wounds to his head. Johnston was found near the end of the bed, and she appeared to be alive. She later died at a hospital of a gunshot wound to her head.
>
> Right before the shootings, the defendant and Letang had been at the home of a friend of the defendant, who lived in Webster; a woman and a man were also

there. Both the woman and the defendant had been smoking "crack" cocaine. The woman testified that the more "crack" the defendant smoked, the more "crazy" he became. The defendant was agitated; he was pacing back and forth, waving his gun around, saying that he was going to put bullets in their heads. He also said that Bash owed him money for drugs and that Mercier was "just a stupid bitch." Prior to leaving the house, the defendant said he was going to "take care of some business" and left with his firearm.

The defendant and Letang returned to the friend's home. They came running up the stairs, saying that they had just murdered some people. The defendant and Letang told the woman that if she said anything about their involvement in the murders that they would "put a cap in her head." There was discussion about killing the woman because she knew and had seen too much. The defendant eventually went outside the house and demanded that the woman join him. He was pacing in the road with his firearm, telling the woman both that he did not mean to do it and that he did not commit the murders. Ultimately, however, the defendant told her that he "shot the motherfucker," referring to Bash, and that he put the three victims on the bed and shot them execution style. He put the gun to the woman's head several times, threatening to shoot her in the head if she said anything about his involvement in the murders.

The woman and the defendant walked down the street where the defendant stopped to hide his gun, which the defense stipulated was used to shoot the victims, in the cellar of a home. He warned the woman not to tell anyone where he hid the gun. Next, they walked to the defendant's parents' home, where he changed out of his bloody clothing. Finally, they walked through town and ended up back at the friend's home where they slept until later that morning.

When they woke up, the police had the house surrounded. The defendant got up, saying, "I didn't do it," as he left the house and ran into some woods behind the home, where he was arrested.

The defendant was interviewed by two State police troopers at the Dudley police department. Although the defendant initially declined to speak with the officers, after he spoke to his wife and mother, he agreed to the interview. The defendant admitted that he was in Webster the night before and "smoked a bunch of crack," but initially denied seeing Bash.

However, after the defendant figured out that Mercier had survived and was told that the police had found his gun, he admitted to committing the shootings and stated that he knew he was going to jail. The defendant stated that he had been doing a lot of drugs that night, and after "the gun went off" and he shot Johnston, he thought, "If I leave them alive, I'm going to jail for my life, so I [shot Bash and Mercier]."

He also told the officers, "When I'm on drugs, I see . . . lots of things. I get real crazy. I hallucinate . . . I have psych attacks. I get rages. I am a different total person." The defendant told the officers that he was off his medications and that he was bipolar and schizophrenic, had anxiety, and suffered from panic attacks and paranoia. He also noted that when he is off his medication, he gets even more paranoid and goes "cuckoo."

4

*Commonwealth v. Muller*, 477 Mass. 415, 416-19, 78 N.E. 3d 51 (2017).

## Legal Standard

The standard of review for habeas corpus petitions is set forth in 28 U.S.C. § 2254(d), as amended by the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 97, 131 S.Ct. 770 (2011). Under this standard, a federal court may only grant the writ if the underlying state court adjudication resulted in a decision that either "(1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Brown v. Ruane*, 630 F.3d 62, 66-67 (1st Cir. 2009) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

A state court decision is "contrary to" clearly established Supreme Court precedent when "it applies a rule that contradicts the governing law set forth in the Court's cases or if it confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a different result." *Price v. Vincent*, 538 U.S. 634, 634-35, 123 S.Ct. 1848 (2003). A state court unreasonably applies clearly established Supreme Court precedent "if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular case." *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014). "Evaluating whether a rule application was unreasonably requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see also Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495 (2000) ("an *unreasonable* application of federal law is different from an *incorrect* application of federal law."). Thus, in order to prevail on a petition for habeas under 28 U.S.C. § 2254(d)(1), the petitioner must demonstrate that "the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 101, 131 S.Ct. 770.

Petitioner is also entitled to habeas relief if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Under 28 U.S.C. § 2254(e)(1), "'a determination of a factual issue made by a State court shall be presumed to be correct.' The petitioner bears the burden of overcoming that presumption by proving 'clear and convincing evidence.'" *Teti v. Bender*, 507 F.3d 50, 57 (1st Cir. 2007); *see also Mastracchio v. Vose*, 274 F.3d 590, 598 (1st Cir. 2001) ("A habeas petitioner therefore must clear a high hurdle before a federal court will set aside any of the state court's factual findings."). In addition, "[t]he 'presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact.'" *Teti*, 507 F.3d at 58 (quoting *Norton v. Spencer*, 351 F.3d 1, 6 (1st Cir. 2003)).

In addition, a petitioner is not entitled to habeas relief on the basis of a non-structural constitutional error, unless he "can establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993). Specifically, a petitioner must show that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct 1239 (1946)). Further, "when a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable." *Fry v. Pliler*, 551 U.S. 112, 119, 127 S.Ct. 2321 (2007) (emphasis in original); *see also Connolly v. Roden*, 752 F.3d 505, 511 (1st Cir. 2014) ("There is clear logic [to this framework]: if an error had

a 'substantial and injurious' effect on a jury's verdict . . . then it is necessarily unreasonable to conclude that the error was harmless beyond a reasonable doubt.").

## **Discussion**

### *1. Grounds I, II, & III*

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546 (1991)).

The First Circuit has consistently held that the Massachusetts contemporaneous objection rule, which requires a party to make their objection known at the time of the ruling, Mass. R. Crim. P. 22, is an independent and adequate state procedural ground that precludes federal collateral review. *Janosky v. St. Amand*, 594 F.3d 39, 44 (1st Cir. 2010) (citations omitted). *Cf. Johnson v. Mississippi*, 486 U.S. 578, 588-89, 108 S.Ct. 1981 (1988) (requiring that a state procedural rule be consistently applied to constitute independent and adequate state ground).

While the SJC assessed the merits of Petitioner's claim under the miscarriage of justice standard, this discretionary review does not constitute a waiver of the contemporaneous objection rule. *Janosky*, 594 F.3d at 44 (citations omitted); *see also Gunter v. Maloney*, 291 F.3d 74, 79 (1st Cir. 2002) ("Miscarriage of justice review by the SJC . . . does not itself create independent rights in habeas petitioners."); *Tart v. Massachusetts*, 949 F.2d 490, 496 (1st Cir. 1991) ("The mere fact that a state appellate court engages in a discretionary, and necessarily cursory, review under a 'miscarriage of justice' analysis does not in itself indicate that the court has determined to waive

an independent state procedural ground for affirming the conviction."); *Lee v. Corsini*, 777 F.3d 46, 57 (1st Cir. 2015) ("[P]rocedurally defaulted claims cannot be resurrected by a single justice's holistic review of the merits in the context of a miscarriage-of-justice analysis."). *Cf. Beard v. Kindler*, 558 U.S. 53, 60, 130 S.Ct. 612 (2009) (holding that "a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review"). Federal courts "will not infer waiver of a contemporaneous objection rule unless the state appellate court has made it reasonably clear that its reasons for affirming a conviction rest upon its view of federal law," rather than the pertinent state procedural requirement. *Tart*, 949 F.2d at 496 (quotation marks and citation omitted). The SJC found no substantial risk of a miscarriage of justice in accordance with the state procedural regarding all of Petitioners objections. Accordingly, I will not infer a waiver of the contemporaneous objection rule.

Because Petitioner's counsel made no contemporaneous objections to the alleged errors in the jury instructions or the prosecutor's closing, the SJC reviewed for a substantial likelihood of a miscarriage of justice. *See Muller*, 477 Mass. at 428, 429, 431. Further, Petitioner conceded in his appellate brief that no contemporaneous objections were made at trial and that substantial likelihood of a miscarriage of justice was therefore the appropriate standard of review. (Docket No. 16, at 34, 39, 43). Consequently, I find that Petitioner procedurally defaulted all of the grounds on which he seeks relief from this Court.

A procedural default may be excused, however, if the "petitioner can demonstrate cause for the default and actual prejudice." *Janosky*, 594 F.3d at 44 (citing *Burks v. Dubois*, 55 F.3d 712, 716 (1st Cir. 1995)). "The general requirement for cause for a procedural default is that the prisoner must show 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Gunter v. Maloney*, 291 F.3d 74, 81 (1st Cir. 2002)

8

(quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639 (1986)). Petitioner has not offered any cause for the default.

A court may also excuse the default if the petitioner can demonstrate there was a "fundamental miscarriage of justice." *Id.* "To show that a fundamental miscarriage of justice would occur in the habeas context, 'petitioner must establish actual innocence.'" *Id.* at 83 (quoting *Simpson v. Matesanz*, 175 F.3d 200, 210 (1st Cir. 1999)). To do this, "petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851 (1995). Here, Petitioner has made no credible argument that he is actually innocent.[1]

## 2. *Ground IV*

Petitioner argues that "the state's judicial system is not fulfilling it's constitutional responsibility in the adjudication of mentally disabled persons." (Docket No. 1, at 11). Petitioner's argument seems to be based on the argument he presented to the SJC for relief pursuant to Mass. Gen. Laws ch. 278, § 33E. Insofar as Petitioner argues that there is an error with respect to Section 33E relief, this Court cannot review that claim. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Further, if Petitioner contends that his conviction violated the United States Constitution, he did not present that claim to the SJC. AEDPA instructs that habeas relief "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."

---

[1] Respondent urges the Court to dismiss the petitioner because Petitioner has not satisfied the exhaustion requirement. *See* 28 U.S.C.§ 2254(b)(1)(A) (instructing that federal courts may not grant habeas relief "unless it appears that the applicant has exhausted the remedies available in the courts of the State"). Because the Court finds that Petitioner has procedurally defaulted his claims, the Court will not address whether he has exhausted Grounds I, II, & III.

28 U.S.C.§ 2254(b)(1)(A). Thus, federal courts "will not entertain an application for habeas relief unless the petitioner first has fully exhausted his state remedies in respect to each and every claim contained within the application." *Adelson v. DiPaola*, 131 F.3d 259, 261 (1st Cir. 1997) (citation omitted). The exhaustion requirement provides "the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347 (2004). "Where, as here, a state's highest court offers discretionary review, a petitioner must present that court with the opportunity to review the federal claim to have exhausted available state remedies." *Josselyn v. Dennehy*, 475 F.3d 1, 3 (1st Cir. 2007).

To satisfy the exhaustion requirement, "a habeas petitioner bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal basis of [his] federal claim." *Adelson*, 131 F.3d at 262. Insofar as Petitioner makes a Constitutional challenge to Section 33E review, Petitioner has not satisfied his burden to show that the issue was fairly presented to the state courts. Accordingly, if the claim is a federal claim, it is unexhausted.

## Conclusion

For the reasons stated above, the petition for habeas corpus (Docket No. 1) is ***denied*** and Respondent's motion to dismiss (Docket No. 12) is ***granted***.

## Certificate of Appealability

The statute governing appeals of final orders in habeas corpus proceedings provides that an appeal is not permitted "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a "substantial showing," a petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were

10

adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595 (2000) (internal quotation marks omitted). This is a low bar; a claim can be considered "debatable" even if every reasonable jurist would agree that the petitioner will not prevail. *Miller-El v. Cockrell*, 537 U.S. 322, 338, 123 S.Ct. 1029 (2003). In ruling on an application for a certificate of appealability, a district court must indicate which specific issues satisfy the "substantial showing" standard. 28 U.S.C. § 2253(c)(3).

Petitioner either procedurally defaulted Grounds I, II, and III. Further, he has not made any showing of cause or actual innocence. Accordingly, I find that no reasonable juror could debate whether Petitioner has defaulted on his claims. *See Delacruz v. Vidal*, 2017 WL 1330191, at *1 (D. Mass. Apr. 6, 2017) (denying a certificate of appealability for claims that were procedurally defaulted); *Brown v. O'Brien* 755 F. Supp. 2d 335, 337 (D. Mass. 2010) (same). Finally, insofar as Ground IV is a Constitutional challenge to Section 33E review, Petitioner has not exhausted this claim. I also find that no reasonable juror could find that the issue has been fairly presented to the state courts. *See Fletcher v. Marshall*, 525 F. Supp. 2d 233, 237 (D. Mass. 2007) (denying a certificate of appealability for failure to exhaust claims).

Consequently, I am denying a COA with regard to all of Petitioners claims.

**SO ORDERED**

                                                 */s/ Timothy S. Hillman*
                                                 **TIMOTHY S. HILLMAN**
                                                 **DISTRICT JUDGE**